IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| CLEVA COLLINS, Mother and next friend of minor SRC, | )<br>)<br>) |
| Plaintiff, | )<br>)<br>) |
| v. | )     Case No. 09-4120-JAR<br>) |
| MICHAEL J. ASTRUE, Commissioner of Social Security Administration, | )<br>)<br>)<br>) |
| Defendant. | )<br>) |

## MEMORANDUM AND ORDER

The Commissioner of Social Security denied claimant's application for supplemental security income. Plaintiff, the mother and next friend of the claimant, a minor, filed this action and a brief (Doc. 16) in support of reversal of the decision of the Administrative Law Judge (ALJ) and remand for further proceedings. The central issue in this appeal is whether the ALJ erred in giving insufficient weight to the opinion of Dr. Benecaulter, claimant's treating psychiatrist, and in doing so, concluding that claimant did not have either one extreme limitation or two or more marked limitations that qualify her for a determination of disability for a functional equivalency to a listed impairment. The Court has reviewed the briefs and the administrative record and is prepared to rule. As described more fully below, the Court reverses the ALJ's decision denying claimant disability benefits and remands the case for further proceedings in accordance with this opinion.

**I.    The ALJ's Decision**

The claimant is currently fifteen years old, and was fourteen years old at the time of the

hearing before the ALJ. Claimant seeks childhood supplemental security income, with an alleged onset disability date of January 1, 2004. Claimant has Attention Deficit Hyperactivity Disorder (ADHD) and asthma.

The ALJ found that claimant had never performed substantial activity, had medically determinable impairments which are severe for ADHD, and a history of asthma. The ALJ found that although severe, the impairments were not of a severity that medically meets or equals any listed impairments; and that the impairments are not functionally equivalent in severity to any listed impairments. The ALJ found that among the six functional domains, claimant had marked limitations in acquiring and using information, but no marked or extreme limitations in any of the other five domains.[1] Because the ALJ found that claimant does not have "marked" limitations in at least two functional domains or "extreme" limitations in at least one functional domain, the ALJ concluded that claimant was not disabled within the meaning of the Social Security Act.

The ALJ expressly gave "little weight" to the January 2009 Medical Statement of the treating psychiatrist, Dr. Benecaulter, who opined that claimant had an extreme limitation in the domain of attending and completing tasks. The ALJ noted that he had "considered all medical opinions in this case"; however, he did not expressly adopt or discuss the opinions of consulting psychiatrists and psychologists who did not examine claimant, but based their opinion on a review of the records. There were two such opinions of consulting sources in the record: (1) the November 2006 opinion of psychiatrist Inzerillo and psychologist Cohen, that claimant had a

---

[1]The other five domains are: attending and completing tasks; interacting and relating with others; moving and manipulating objects; caring for yourself; and health and physical well being. 20 C.F.R. § 416.926a(b)(1)(i)-(vi).

marked limitation in attending and completing tasks; and (2) the January 2007 opinion of psychiatrist Parsons and psychologist McRoberts, that claimant had a less than marked limitation in the domain of attending and completing tasks.

In explaining his decision to not rely upon the treating psychiatrist Dr. Benecaulter's opinion that claimant had an extreme limitation in the domain of attending and completing tasks, the ALJ first identified the evidence he relied upon. The ALJ noted that he relied upon the treatment records for 2007-2008, which documented significant improvement in claimant's attention and concentration when appropriately medicated, and two mental status examinations of record documenting that claimant had normal attention and concentration. The ALJ further relied on the testimony of plaintiff, claimant's mother, who testified that claimant's medication helped claimant stay calm and focused. Claimant and her mother testified that currently, claimant has done well in special education classed for reading and math, although scoring grades of C and D in the last two quarters of her math classes; and that in her special education reading class as well as her other mainstream classes, claimant was scoring A's, B's and C's. The ALJ compared these favorable reports with a teacher's report in 2006 that documented claimant having a very short attention span and high distractability.

The ALJ went on to explain that he accorded little weight to the opinion of the treating psychiatrist because the opinion was inconsistent with the totality of the evidence and the testimony, as described above. The ALJ noted that,

> claimant's mood and behavior have improved significantly with medication and special education classes, and she has done well in school. Moreover, the record and testimony point to no further school suspensions or disciplinary actions for claimant, and the mental health treatment records have shown a significant improvement in claimant's overall mental condition. As noted by claimant and not disputed by her mother at the hearing, claimant has not experienced any

      severe mental symptoms as long as she is on medication, has had no
      hospitalizations, and has done well at school, socially and academically, albeit for
      some problems in reading and math for which she requires special education
      classes.[2]

The ALJ concluded that claimant had less than a marked limitation in attending and completing tasks, apparently also giving little weight to the November 2006 opinion of the consulting psychiatrist and psychologist that claimant had a marked limitation. Although not expressly stated, the ALJ apparently gave greater weight to the January 2007 opinion of a different consulting psychiatrist and psychologist who opined that claimant had less than marked limitation.

## II.    Standard of Review

Judicial review under 42 U.S.C. § 405(g) and 42 §1383(c)(3) is limited to whether defendant's decision is supported by substantial evidence in the record as a whole and whether defendant applied the correct legal standards.[3] The Tenth Circuit has defined "substantial evidence" as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."[4] In the course of its review, the court may not re-weigh the evidence or substitute its judgment for that of defendant.[5]

## III.    Relevant Framework for Analyzing Claim of Disability and the ALJ's Findings

In *Briggs v. Massanari*, the Tenth Circuit synopsized the regulations governing what constitutes disability of child claimants, and the sequential three-step process the ALJ must use

---

[2](Doc. 13, Ex. 3 at 16.)

[3]*See Briggs v. Massanari*, 248 F.3d 1235, 1237 (10th Cir. 2001).

[4]*Wilson v. Astrue*, 602 F.3d 1136, 1140 (10th Cir. 2010).

[5]*Cowan v. Astrue*, 552 F.3d 1182, 1185 (10th Cir. 2008).

in determining whether there is disability.[6] A child under eighteen years of age is "disabled" if the child "has a medically determinable physical or mental impairment, which results in marked and severe functional limitations, and which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."[7]

The determination of disability employs a sequential three-step process, requiring the ALJ to determine that the child: (1) is not engaged in substantial gainful activity, (2) has an impairment or combination of impairments that is severe, and (3) has an impairment that meets or equals an impairment listed in Appendix 1, Subpart P of 20 C.F.R. Pt. 404. 20 C.F.R. § 416.924(a).[8] The third step requires the ALJ to determine whether the impairment or combination of impairments either "medically equals, or functionally equals the listings."[9] An analysis of functional equivalence requires that the ALJ assess all relevant factors, including "(1) how well the child initiates and sustains activities, how much extra help he needs, and the effects of structured or supportive settings; (2) how the child functions in school; and (3) how the child is affected by his medications or other treatment."[10] The ALJ considers how well the child functions in his activities in six domains: (1) acquiring and using information; (2) attending and completing tasks; (3) interacting and relating with others; (4) moving about and manipulating

---

[6]248 F.3d at 1237–38.

[7]*Id*. (quoting 42 U.S.C. § 1382c(a)(3)(C)(k)).

[8]*Id.*

[9]*Id.*

[10]*Id.* (citing 20 C.F.R. § 416.926a(a)(1)-(3)).

5

objects; (5) caring for yourself; and (6) health and physical well-being.[11]

"An 'extreme limitation' is one that 'interferes *very* seriously with [the child's] ability to independently initiate, sustain or complete activities,'"[12] while "[a] marked limitation is one that interferes seriously with the child's 'ability to independently initiate, sustain or complete activities.'"[13]

## IV. Analysis

The ALJ found that claimant had a marked limitation in the domain of acquiring and using information. No party takes issue with that determination. The question is whether the ALJ erred in determining that the claimant had less than a marked limitation in the domain of attending and completing tasks. Here, the treating psychiatrist opined in January 2009 that claimant had an extreme limitation; in November 2006 consulting sources opined that claimant had a marked limitation and in January 2007 other consulting sources opined that claimant had a less than marked limitation. Plaintiff argues that the ALJ erred in failing to give proper weight to the treating psychiatrist's opinion that claimant had an extreme limitation in the domain of attending and completing tasks, and that the ALJ's determination that claimant had less than a marked limitation is not supported by substantial evidence.

A treating source's opinion is not dispositive on the ultimate issue of disability,[14] but the

---

[11]*Id.* (citing 20 C.F.R. § 416.926a(b)(1)(i)-(vi)).

[12]*Id.* at 1238 n.1 (quoting 20 C.F.R. § 416.926a(e)(3)(i)) (emphasis added).

[13]*Id.* (quoting 20 C.F.R. § 416.926a(e)(2)(i)).

[14]*Castellano v. Sec'y of Health & Human Servs.*, 26 F.3d 1027, 1029 (10th Cir. 1994) (citing 20 C.F.R. §§ 404.1527(e)(2), 416.927(d)(2)).

6

ALJ must give "controlling weight" to the opinion of a treating source, provided that opinion is "well-supported by medically acceptable clinical and laboratory diagnostic techniques."[15] If the opinion is well supported, then the ALJ must confirm that it is consistent with other substantial evidence in the record.[16] If these requirements are not present, the opinion is not entitled to controlling weight.[17] If, after this determination, the ALJ decides the treating source's opinion is not entitled to controlling weight, the opinion is still entitled to deference and must be weighted using factors such as: the length of the treatment relationship, the frequency of examination, nature and extent of treatment provided, the extent to which the opinion is supported by objective medical evidence, the opinion's consistency with the record as a whole, and other factors brought to the attention of the ALJ that tend to support or contradict the opinion.[18] In short, the ALJ cannot disregard a treating source's opinion that a claimant is disabled without giving legitimate and specific reasons for doing so.[19]

Furthermore, the ALJ must give the most weight to a treating source's opinion, if supported by the evidence, while opinions of sources who have examined the claimant are given less weight, and opinions of sources, such as the sources in this case, who merely review the claimant's records are to be given the least amount of weight.[20] In addition, the ALJ must

---

[15]*Watkins v. Barnhart*, 350 F.3d 1297, 1300 (10th Cir. 2003) (quoting Soc. Sec. Reg. 96-2p, 1996 WL 374188, at *2)).

[16]*Id.*

[17]*Id.*

[18]*Watkins*, 350 F.3d at 1300-01; Soc. Sec. Reg. 96-2p.

[19]*See Goatcher v. U.S. Dep't of Health & Human Servs.*, 52 F.3d 288, 290 (10th Cir. 1995) (citing *Frey v. Bowen*, 816 F.2d 508, 513 (10th Cir. 1987)).

[20]*Talbot v. Heckler*, 814 F.2d 1456, 1463 (10th Cir. 1987).

consider the same factors used for the treating source when deciding the weight to give any other sources's opinion, including the extent to which the opinion is supported by objective medical evidence.[21]

The ALJ explained that he gave little weight to the opinion of treating psychiatrist Dr. Benecaulter, because such opinion was inconsistent with Dr. Benecaulter's own treating records, and inconsistent with the testimony of claimant, claimant's mother and claimant's grades and school performance. Having thoroughly reviewed the treating records, the Court agrees that Dr. Benecaulter's contemporaneous treatment records do little to support the opinion in his January 2009 Medical Statement that claimant's limitations were extreme.[22] While Dr. Benecaulter opined that claimant had extreme difficulties in maintaining concentration, persistence or pace, and marked every box on the form signifying a host of problems with attention and concentration, with few exceptions, Dr. Benecaulter's treatment records do not include any such observations or findings.

Dr. Benecaulter's treatment records document that he saw claimant on December 8, 2006, and noted that she had problems with attention; he prescribed Ritalin. He saw claimant next in January 2007, and noted that although there had been some improvement with medication, claimant was still "too hyperactive." He also noted no significant change since her last assessment, and that "attention/concentration" was normal. In his treatment records for February, May and August of 2007, Dr. Benecaulter noted that claimant was doing well. He

---

[21]*Goatcher,* 52 F.3d at 290.

[22]*See White v. Barnhart,* 287 F.3d 903, 907-08 (10th Cir. 2001) (discrepancy between treating physician's very restrictive functional assessment and the physician's contemporaneous examination a legitimate factor for rejecting that opinion).

noted in November 2007 that claimant was not complying with her medication regimen, but was back in compliance and doing well at claimant's February 2008 visit. Thereafter, at claimant's May 2008 and December 2008 visits, Dr. Benecaulter continued to note that claimant was doing well at school, was on the honor roll in May, but at her December 2008 visit, he noted that claimant was experiencing some symptoms that might indicate development of an affective disorder.

Because Dr. Benecaulter's opinion was not supported by objective medical evidence, such as his own treatment records, the Court agrees with the ALJ that Dr. Benecaulter's opinion is not entitled to controlling weight. However, Dr. Benecaulter's opinion is still entitled to deference and must be evaluated in light of the length of the treatment relationship and factors that lend credence to his clinical observations, such as the frequency of the examination and the nature and extent of treatment, as well as whether his opinion is consistent with and supported by other evidence in the record. To be sure, Dr. Benecaulter treated claimant over the course of two years, and saw claimant three to four times a year, suggesting that he had the ability to monitor claimant's behavior over a two-year period of time.

More importantly, while the Court does not find other evidence in the record supporting an opinion of extreme limitation, there is certainly other substantial evidence in the record supporting a marked limitation in claimant's ability to attend to and complete tasks. What is pertinent to a determination under the domain of attending and completing tasks is claimant's ability to initiate, sustain or complete activities.[23] Factors to consider include how the claimant functions in school, the effects of structured or supportive settings, how the claimant is affected

---

[23] 20 C.F.R. § 416.926a

9

by her medications and generally how well the claimant both initiates and sustains activities.[24] There is specific evidence in the record on these factors, evidence that the ALJ did not fully evaluate, either in terms of explaining the little weight accorded to the treating psychiatrist, or in terms of explaining his finding that claimant has a marked limitation in this domain.

The ALJ focused on Dr. Benecaulter's cryptic periodic notations that claimant was doing better, that the medication had improved claimant's attention, and that claimant was doing well in school. He also relied upon the testimony of claimant and claimant's mother, who testified that claimant's medication improved claimant's ability to stay focused and calm. This is important, but incomplete, evidence and the ALJ did not address other substantial evidence. The question is not so much if claimant has shown improvement, but the nature and extent of her limitations in attending and completing tasks.

Although the Court agrees that Dr. Benecaulter's opinion was unsupported by his treatment records, the ALJ failed to consider other evidence in the record that supported his opinion. For example, Dr. Benecaulter, in completing the form Medical Statement in January 2009, checked a series of boxes on the Medical Statement form, that opined that claimant had problems with,

> Often fails to pay close attention to details
> Has difficulty sustaining attention in work and play
> Does not seem to listen when spoken to directly
> Often does not follow through on instructions and fails to finish tasks
> Often has difficulty organizing tasks and activities
> Often avoids, dislikes, or is reluctant to engage in tasks that require sustained mental effort
> Often loses things
> Is easily distracted by extraneous stimuli

---

[24]*Briggs v. Massanari*, 248 F.3d 1235, 1237–38 (10th Cir. 2001) (citing 20 C.F.R. § 416.926a(a)(1)-(3)).

Is often forgetful[25]

Although Dr. Benecaulter's treatment records do not support this part of his opinion, other evidence supports some of the above findings. Irrespective of evidence that claimant had improved with the use of medication in 2007, 2008 and even 2009, there is evidence that claimant still had significant problems with attention and that these problems were affecting claimant's functioning at home and at school, even within structured or supportive settings. In 2006, claimant's teacher reported that claimant was very distractible, and had a very short attention span, but when medicated, claimant was a "completely different child." Yet, the teacher noted that claimant's problems with attention were affecting claimant's learning and social skills; and, claimant's mother reported that claimant could not sustain activities such as chores or homework to completion. In March of 2008, claimant's Kansas State Assessment testing scores were in the Academic Warning category for reading and math. While these test scores are probative of the domain of using and acquiring information for which the ALJ found a marked limitation; notably, the record also indicates, in a health and physical status assessment done by claimant's school in September 2007, that claimant's problems cause claimant to "constantly move and not be able to focus on what she is doing academically." The same assessment stated that claimant's behavior did "impede his or her learning or that of others," and that claimant "demonstrates low average to borderline abilities as tested in the 5th grade when she was given the WISC-IV, which was thought to be attributed to her attention."

Still other notations in claimant's current Individual Education Plan (IEP) relate to claimant's ability to attend to a complete tasks,

---

[25](Doc. 13, Ex. 8 (13F) at 291).

> [H]er work ethic is very good when she is focused . . . . [Claimant] tends to get distracted very easy when she is near or by peers that don't have the motivation that she needs. . . . [Claimant] is independent and does well when started on a math problems. . . . [Claimant] has difficulty with attention span and following multiple step math problems. . . . [A]s compared to her general education peers, that stay on task 85% of the time in an academic setting [claimant] stays on task 55% of the time. . . . [Claimant] is very easily distracted especially around people that she is familiar with.
>
> . . . .
>
> [Claimant] struggles with her attention span, which affects how she stays on task and learns new concepts. . . . [Claimant] might need more time in the resource [room] so she can concentrate better and focus more on her core subjects.
>
> . . . .
>
> [S]pecial education is assisting [claimant] in all of her subjects by giving her more one on one guidance than her peers to help her become successful in those subjects. [Claimant] also needs adult supervision to stay on task to what she is doing so she can be able to do the academics with her peers. . . . [Claimant] is enrolled in either co-taught or self contained resource classes for extra assistance.
>
> . . . .
>
> [Claimant] needs to be reminded to stay on task an average of 10 times in a 47 min period.[26]

One of the annual goals set in this January 2009 IEP was that claimant "will decrease the needed prompts to stay on task from an average of 10 to 3 in a given class period." The IEP also notes that claimant is the recipient of a number of classroom accommodations that are indicative of a supportive or structured learning environment: separate seating, frequent breaks, preferential seating, extended time, and repeated or restated directions.

In addition to this strong documentation that attention difficulties continued to pervade and affect claimant's academic functioning, a statement of claimant's mother, dated April 27,

---
[26](Doc. 13, Ex. 7(12E) at 171–72, 180, 182, 193.)

2009 indicates similar difficulties at home: "[Claimant] still has difficulties staying on task and staying focused. . . . [S]ince [claimant] has gotten her I.E.P. her progress has improved and she is struggling less. . . . [Claimant] does fairly well as long as she has her medication and I.E.P."[27] Although claimant's mother reports improvement and Dr. Benecaulter reports improvement, based on the IEP and claimant's mother's statements, the Court finds that substantial evidence supports a finding that, despite the improvement, claimant has marked limitations in the domain of attending to and completing tasks. The ALJ did not evaluate this evidence in his decision.

Yet this type of evidence is pertinent to factors counseled in the regulations. For example, the regulation addressing school age children from ages six to twelve provides:

> When you are of school age, you should be able to focus your attention in a variety of situations in order to follow directions, remember and organize your school materials, and complete classroom and homework assignments. You should be able to concentrate on details and not make careless mistakes in your work (beyond what would be expected in other children your age who do not have impairments). You should be able to change your activities or routines without distracting yourself or others, and stay on task and in place when appropriate. You should be able to sustain your attention well enough to participate in group sports, read by yourself, and complete family chores. You should also be able to complete a transition task (e.g., be ready for the school bus, change clothes after gym, change classrooms) without extra reminders and accommodation.[28]

And, with respect to older children between the ages of twelve and eighteen, the regulation provides:

> In your later years of school, you should be able to pay attention to increasingly longer presentations and discussions, maintain your concentration while reading textbooks, and independently plan and complete long-range academic projects. You should also be able to organize your materials and to plan your time in order

---

[27](Doc. 13, Ex. 7(13E) at 204.)

[28] 20 C.F.R. § 416.926a(h)(2)(iv).

13

to complete school tasks and assignments. In anticipation of entering the workplace, you should be able to maintain your attention on a task for extended periods of time, and not be unduly distracted by your peers or unduly distracting to them in a school or work setting.[29]

The educational records demonstrate that claimant has serious deficiencies in staying on task, maintaining concentration, completing tasks, and certainly in maintaining attention for extended periods of time; claimant requires as many as ten prompts to stay on task within a forty-seven minute class period. Even in the structured and supportive environment of her special education classrooms, the records indicate that claimant struggles with attending to and completing tasks.

Moreover, the ALJ's opinion does not address what weight, if any, he accorded to the 2006 and 2007 opinions of the consulting psychiatrists and psychologists; he only mentions that he considered these opinions. Yet, the weight to be accorded to consulting psychiatrists and psychologists should also be evaluated using the above described factors. From the Court's review, the November 2006 opinion of consulting psychiatrist Inzerillo and psychologist Cohen, that claimant had a marked limitation in attending and completing tasks, relied primarily upon education records and reports of claimant and claimant's mother. Specifically, Drs. Inzerillo and Cohen explained in pertinent part,

> Teacher describes her as very distractible, and very short attention span. On meds is completely different child. Attentional problems appear to be impacting both learning and social skills. Parent reports at home she does not finish what she starts, does not complete chore or homework.
>
> . . . .
>
> The claimant receives special education services under the designation of OHI.

---

[29] 20 C.F.R. § 416.926a(h)(2)(v).

14

> She is currently in fifth grade, and functions academically at a third to fourth grade level. IQ testing done by the school shows abilities in the borderline range, although this is felt to be an underestimate *because of her attentional problems*.
>
> Review of evidence suggests a marked impairment in Domain 2, as her problems with inattention appear to be negatively impacting both academics and socialization.[30]

In contrast, the January 2007 opinion of consulting psychiatrist McRoberts and psychologist Parsons, that claimant had a less than marked limitation in attending and completing tasks, relied primarily on Dr. Benecaulter's treatment notes that claimant had improved with medication. Specifically, Drs. McRoberts and Parsons explained in pertinent part,

> Parent notes child does not finish tasks started at home. Teacher report states child has very short attention span with high distractability. However, prior and current records from Heritage Mental Health Clinic indicate the child appears to be doing well when she is on medication. Child makes use of ritalin and lamictal. Current records from Heritage indicate normal speech, normal mood, euthymic mood, normal affect and normal thought process.[31]

Although the ALJ states that he considered all medical opinions, he fails to address what weight, if any, he accorded the consultants' two opinions. To be sure, the November 2006 opinion is based on problems with attention, reported both at home and school, that affected not only claimant's IQ testing, but affected academics and socialization. The ALJ does not evaluate this opinion. And, the January 2007 consultant opinion, rendered just two months later, also notes that claimant has problems with attention, reported both at home and school that affected claimant's ability to finish tasks at home. This January 2007 consultant report also apparently relies upon findings in Dr. Benecaulter's treatment records that have little or nothing to do with attending to and completing tasks. Findings such as normal affect, normal mood, normal speech

---

[30](Doc. 13, Ex. 8(8F) at 251, 254 (emphasis added)).

[31](Doc. 13, Ex. 8(11F) at 265.)

15

do not appear pertinent to the domain of attending to and completing tasks. Thus, while the ALJ, appropriately denied controlling weight to the opinion of the treating psychiatrist, Dr. Benecaulter and explained that the record failed to support a finding of extreme limitation, the ALJ failed to evaluate the conflicting opinions of the consulting providers—one opinion that claimant had a marked limitation and one opinion that claimant had a less than marked limitation.

Because the Court has determined from a complete review of the record that there is substantial evidence supporting an opinion that claimant has a marked limitation in attending to and completing tasks, in addition to the undisputed fact that she has a marked limitation in the domain of acquiring and using information, the Court reverses and remands this matter for further proceedings,

Upon receiving the court's final order of remand, the Appeals Council of the Social Security Administration will remand this case and direct the ALJ to reassess the degree of claimant's functional limitations in domain two, attending to and completing tasks. The ALJ should discuss what deference and weight if any is accorded the opinion of the treating source in light of evidence in the record that demonstrates a marked limitation, as well as discuss what weight is accorded the conflicting opinions of the consulting sources concerning claimant's domain two limitations.

**IT IS THEREFORE ORDERED BY THE COURT THAT** defendant's decision denying plaintiff disability benefits is **REVERSED AND REMANDED** pursuant to the fourth sentence of 42 U.S.C. § 405(g) and 42 § 1383(c)(3) for further proceedings in accordance with this Memorandum and Order.

**IT IS SO ORDERED.**

(Dated: August 20, 2010

                                                        S/ Julie A. Robinson

                                                        JULIE A. ROBINSON  
                                                        UNITED STATES DISTRICT JUDGE